All right, Ms. Grafton, you may proceed. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. My name is Rebecca Grafton, and I represent Ingrid Nolasco-Figueroa and her two children, the petitioners in this case. This is the case of a young woman, a mother of two small children, whose partner was murdered on a soccer field in plain sight in Honduras. After killing her partner, the murderers, the Santos family, announced to the crowd that they were going to murder his family members as well. This threat was credible enough that the petitioner moved four hours away from her home with her six-month-old baby and two-year-old child to go live with her grandmother. About a year and a half later, it became clear to her that this relocation was not enough to keep her and her children safe when her partner's brother, Mardoni, was murdered about an hour away from where the petitioner was staying. Just before leaving to come to the United States, the petitioner again realized that she had not successfully relocated when she saw a daughter of the Santos family at the local market only about 15 minutes from where she was. Fearing for her own life and the lives of her children, knowing her persecutors were close, she fled to the United States. About six months after arriving in the United States, another one of her partners was murdered. The petitioner successfully passed her credible fear interview upon arriving to the United States, provided a written affidavit in support of her application for asylum, and testified credibly before the immigration judge, both under direct and cross-examination. She provided credible testimony and corroborated her claim with the police report regarding her partner's murder, the death certificate for her partner's brother's murder, a news article about the Santos family, and other background documents, including birth certificates for herself. How does the death certificate and newspaper article corroborate her claims? Well, Your Honor, the death certificate corroborates her claim because it does provide objective evidence that she is telling the truth about Mardoni's death specifically. It does corroborate that the date she provided both at the border... That he's dead. That's correct, Your Honor, that he is dead. But not that he was murdered. That's correct, Your Honor, and the immigration judge focused on that in her decision as well. However, as the petitioner testified before the court credibly, the family was afraid to advise the government of Honduras what the manner of death was for fear of their own safety. In reviewing the death certificate itself, there is no specific location for a manner of death to be indicated. There is a notes section, but there is no manner of death like the death certificates we have here in the United States. So maybe you're more corroborating evidence on that than is the police report, which does say that they're investigating a murder and who specifically they're investigating, correct? That's correct, Your Honor. That would be the most important piece of corroborating evidence. And notably, the immigration judge failed to discuss that in her finding on whether the petitioner met her burden of proof on page 66 of the administrative record is where the immigration judge goes through the corroborative evidence. And as we argued in our briefs, she listed out every item of evidence. We don't deny that. But then she goes on to make this finding that the petitioner did not adequately corroborate her claim, but doesn't discuss why that police report isn't enough. So what about the threats? What evidence corroborates the threats that were made? Well, what's corroborated is her credible testimony. Her credible testimony establishes that, Your Honor. And there is no doubt. Corroboration is different. You're right. Sometimes the testimony of a person can be enough, but that's not. My question was what corroborates? I think what corroborates is her actions itself. The fact that she felt that she was afraid enough to move with her two young children four hours away. Wait a minute. Now you're arguing because obviously she says it, and then obviously that's going to influence where her emotions corroboration outside of her actions and her her testimony. Your Honor, there was no independent corroborative evidence on that specific point. I would admit to that. That's not a specific point. That's a very important point in terms of the threat, because that's what we deal with. The threat being made as to weighing the threat that was made to her. Because this is a case where there was no violence to her directly, so therefore it's derivative. And the question is, for example, sister-in-law or the niece. There was no statements from either of them, correct? That's correct, Your Honor. Well, what corroborating evidence was there then other than her testimony and her actions, as you say, that one could infer that might be consistent with having that view? The petitioners would argue that she is not required to corroborate every aspect of her claim. I'm asking you, do you concede that there was none? I do concede that there was no other additional independent corroborative evidence on that point. However, see that under the framework of the law, that that is can be properly considered as reasonably expected that one would have that type of corroborating evidence. I think that's the question, Your Honor, is whether we would reasonably expect her to have that corroborative evidence. And we would argue that for two reasons. One, the immigration judge erred in that she never made that finding, Your Honor. She never made a fixed finding in her decision about whether that evidence was reasonably available, which as we noted in our 28J letter, this court in Glamborough recently held that she is required to make that finding about whether it's reasonably available. So for that reason, we would argue that. You said the BIA did not mention anything about the fact that there was no statement at all from her family? Well, the BIA specifically states that the evidence was reasonably available. However, there is no findings that are made to support that sentence. So even though the BIA casually glosses over that, there is no finding, which is what this court requires. Not simply that the issue of reasonably available be mentioned. And the immigration judge herself does not make a statement that the evidence is reasonably available. She just specifically states that the petitioner gave no explanation. However, that, as we discussed in our brief, it doesn't match with the record, Your Honor. The immigration judge asked my client that question, but then she cut her off before she allowed her to provide any explanation. And as this court held in Linjohn, the immigration judge has a duty to get that information from the petitioner as to why is this evidence not here in the record. And that's where the immigration judge erred on this point, Your Honor. So you're saying that the law is that weak? You can't consider a lack of corroboration unless you ask the question, where is it? Linjohn specifically states that it's like a third circuit case in Linjohn, but specifically holds the immigration judge needs to provide the petitioner the opportunity to explain why that evidence isn't there. And she did not do so in this case. She asked the question, but the record is clear that she cut off any sort of explanation and never touched back on that. She moved on from that point entirely. But didn't petitioner provide a response to the question when the immigration judge asked the question? I mean, the response was arguably non-responsive, but there was a response to the question. Your Honor, if you're reading through the transcript, it looks like it was an issue with the interpreter that the petitioner gave a response. The interpreter had some difficulties. And then we went back to that point on getting the petitioner's response into the record, but it was not completed. The immigration judge went on to go discuss these issues with the death certificate from Mardoni that we've discussed earlier today. And so that was an error. The immigration judge had to do the underline, John, to make sure that the petitioner gave an explanation. And there's no facts in the record for the immigration judge to make a finding about whether or not those affidavits are indeed reasonably available. Sorry, I don't know who was talking, but I interrupted. So your argument is that because the immigration people failed to make a factual finding that corroboration was reasonably available, that we must remand. But the IJ did say that she did not quote, did not find respondent's explanation persuasive and considers it reasonable to expect such corroborating evidence. And your contention is that we can't read into that the finding that corroborating evidence wasn't reasonably, wasn't reasonably, was reasonably available. Is that right? Yes, your honor. Well, there's two issues with that. One is that the immigration judge's decision does not match the record. And the immigration judge finds that my client's explanation was not reasonable. However, there is no explanation for the immigration judge to rely on for that. And so it's not supported by the facts that are the record. And then secondly, yes, your honor, we would argue that the Wambura case is clear. The immigration judge needs to make a finding about whether that evidence was reasonably available. And I would argue that a finding is more than just glossing over in one sentence that, well, the petitioner offered no explanation and thus she didn't establish. This was an issue that the immigration judge had a responsibility to make sure if she was going to deny for lack of these corroborating statements, she needed to make sure there was an answer to her question. But what if the answer was science? If the answer was science, your honor, we would expect that the immigration judge would then go on and in her decision explain why my client's answer was not, was not reasonable. That it just did what Judge Mark just told you. What it's, what's basically, a finding not to be adequate. And you're saying that's not enough because you must make a finding as to why, why it's not the same. It would be expected that you would have that, especially in a case where no threat was made to you. Well, your honor, I think there's two issues there. One is that the immigration judge, it's not a lack of responsiveness from my client. It was an issue with an immigration judge who was anxious to get to the next point and did not complete that line of questioning with my client. There was an issue with the interpreter. I note to AR 146, which is where this happens, there's an issue with the interpreter online, you know, 9, 10, 11, 12. The judge tells the interpreter to interpret as much as she could from what my client had started to say. And then she went on and started to discuss this issue with Walter's death, or with a death certificate, and not following up with my client as to why those statements weren't available. And, you know, the BIA brief, we argue a presumed explanation, a possible explanation, which is the fear of the family. And while we argue that in our BIA brief, that's certainly not fact before the court, it was offered as argument that there may indeed be a reasonable explanation. It just was never, the immigration judge never gave my client the opportunity to present that to the court. And that was an error. You know, that my client did mention when she was talking about the death to tell the police or tell the government why Marjoni was deceased for fear of their own safety. And I think we could argue there that if that fear would also likely prevent them from providing these statements to the court. However, again, turning back to the record itself, that never happened in court. That question, that answer, it was cut off and the immigration judge moved on. But she's talking about at JA 146, she did answer a question and talk about, she asked for the death certificate and they needed witnesses, but that they didn't want to go and testify to get the death certificate because of fear. She did provide that answer as the reason why she didn't get the death certificate. That's correct, Your Honor. That was the second brother who was deceased. Walter, the one that was murdered six months after she came into the United States. And I think it was the question that the immigration judge was asked was very overarching. And of course, keeping in mind that there was an interpretation involved by the time that question got to my client was, why didn't you get a statement for the family for any of this? Well, she's playing this death certificate for the second murdered brother, but there was a lot of things the immigration judge was asking in that question. And she never went back to follow up with my client about whether that information, what the answer was to her question. Why didn't you get the document? You want us to believe that it was the immigration judge's fault that your client doesn't have cooperation? No, it's not, Your Honor. What I'm saying is that it's the immigration judge's error to fail to focus on the evidence that's not in the record, which matter of LAC, the agency's own president is very clear on that. That rather than focusing on what's not there, the immigration judge should have focused what's on in there, what was in the record, which as Judge Thacker noted earlier, the police reports regarding her partner's murder. It goes back to what the point is of corroborative evidence. And we don't want to lose sight of the fact that my client, the petitioner was found credible. She testified three times. She gave a credible fear interview with no attorney representation just after making that trip to the United States with her children. Then she provided a written declaration as well as her asylum application. And then she went through this direct and cross examination in front of the court. And there was no inconsistencies, no reason to believe that she was not telling the truth. And so the immigration judge required corroborative evidence, which we don't dispute. She has the authority to do. But what we would argue is that matter of LAC doesn't allow the immigration judge to list out which specific items of evidence would be required. And notably, the additional evidence is subjective. This court has held that these affidavits would have been given limited weight anyways under the Jaju case that the immigration judge cites herself. So there's a lot of problems with this level of proof that the immigration judge is holding my client to. She's not recognizing all the information. I have one quick question before, I know your time's up, but hopefully this won't take too much time on a different issue. Where in your opening brief do you challenge the BIA holding of ineligibility for withholding of removal? We do not challenge that in our argument, Your Honor. I would say that the law is very clear that if my client doesn't establish eligibility for asylum, she would fail on withholding of removal itself. All right. Thank you. Thank you, Your Honor. That's it for me anyway. I think I've reached my time. I'll reserve the remainder for rebuttal, Your Honors. Thank you, Ms. Grafton. Mr. Holt. Good morning, Your Honors. May it please the court, John Holt for the Attorney General. It's always a privilege. We have a former judicial colleague up in Washington, District Court Judge Stanley Sporkin, who loves to say, there's always a key that unlocks every case. The problem is to find the key. We come before the court this morning with the key that unlocks the case. It's very simple. The petitioner had the burden to establish that she could not produce corroborative evidence that was reasonably available. That's the number one point of ruling of the agency. Excuse me. I hear you on that, but the finding of the AJA was that she didn't find that a respondent's explanation was credible, was persuasive. Your argument isn't matching each other. Well, we would submit if we go through an algorithm, it will help the court to understand that the finding is supported by substantial evidence. Where I really think we should start is a top-down view, a global view to understand this case. It's unique in front of the court, and I would submit that you don't see this that often. The petitioner comes before this court making a claim that she has absolutely no knowledge of either personal harm or personal threats. Judge Gregory focused on this in his question. What we have here is an immigration judge that hears a witness come in and say, this is what I've been told, this is what I've heard. On page 179 of the record, that's exactly what she's saying. So she has no knowledge, and the law is quite clear that credible testimony may support a claim for relief or protection, but it doesn't mandate relief or protection. And where the petitioner or the witness has absolutely no knowledge of the underlying facts, justifiably, the law says that the immigration judge may require corroboration if it's reasonably available. This court's opinion in seeing is consistent with long-standing board precedent that the burden is on the petitioner to come in and establish that the evidence is not reasonably available. So after the evidence was necessary, then we come to, what did the judge do? The judge did more than he ever had to do. Here, he identified very specifically the missing evidence that he would like to see, and the judge would like to see. And that was, as you focused on, first of all, information from persiant witnesses, people that had knowledge. And how does that translate? That translates to affidavits of anyone that had any knowledge of any harm to anyone in general, or death to anyone in particular, or secondly, threats to anyone. And the immigration judge wanted petitioner to address why there were absolutely no affidavits from anyone regarding those matters. Secondly, the immigration judge identified that he focused on the death certificates that were admitted and missing in the evidence. With regard to Walter, there was no death certificate. And with regard to Marconi, there was a death certificate, but as Judge Sackler pointed out, there was no indication that what the cause of death was, or even that it was an unlawful killer. So the immigration judge found that corroboration was necessary. The immigration judge very generously identified specific evidence. And then third, immigration judge did give petitioner a very reasonable opportunity to address why that evidence was not available. Indeed, with the questions of DHS counsel on page 145 of the record, and then page 146 to 148, there's a series of questions by the judge regarding particularly why evidence was not available. And if we could submit one fact to this court regarding the unavailability, it's petitioner's admission that she never asked for the affidavit. The court is asked here to say that the judge didn't give petitioner an opportunity to explain. The petitioner said to the court, I didn't even try. Well, can I ask you about a piece of corroborating evidence that is in the record, um, which is the police report. Did the IJ engage with the police report at all, other than to list its existence? The immigration judge indicated that page 185 is the police report to correct your honor. And what's significant about that, as you pointed out, it only identifies that there were suspects. And the suspects have the namesake of... No way. What I'm asking about is whether the IJ did anything other than say that the police report existed. Did the IJ meaningfully address or engage with or consider the police report? The IJ did in the sense that the IJ said after the IJ concluded the petitioner had not corroborated her claim, her testimony, the IJ said it was incumbent upon the judge to evaluate whether the other evidence independently corroborates the claims. It was in that context that the IJ did go to page 185 of the record and say, here's this police report, but it's a report only indicates that these people were suspects. And as you pointed out, Judge Zacher, the newspaper article at page 209 and 210 does not tie in any way to the Santos family. Right. So the police report, I understand the police report itself is in the record at 185. What I'm asking is where does the BIA or the IJ, anybody, talk about the police report and why it is not sufficient corroborating evidence? First of all, again, in context, the agency concluded first that petitioner's testimony did not produce the necessary corroboration. So that being said, there's a vacuum. And the question is, the immigration judge went further, was whether the other evidence filled that vacuum to establish her claims. In that context, the immigration judge didn't mention the police report. I'll quote from Judge Zacher, that the board did not mention specifically that police report. They didn't need to go through every piece of evidence to evaluate and explain why it in itself didn't corroborate the claims. They went through and there was other evidence with regard to the affidavit of the petitioner, the death certificate of Mardoni, the article with regard to the family. The whole litany of evidence that is relevant to corroboration of the case, I claim the agency did consider. So is it the government's view that the police report is not legally sufficient evidence such that the BIA can just ignore it and not meaningfully engage with it? It's the government's position that substantial evidence supports the agency's decision that the evidence that she submitted to corroborate her claim was insufficient to establish her claim. Indeed, the board here acknowledges on page four of its opinion that another fact finder may view the evidence in a different light. We see this all the time. But in terms of the standard of review for this court, it's substantial evidence. We would submit that to say that that police report alone. And Judge Zacher, we would submit that if you evaluate it, that's really all there is. The death certificate of Mardoni doesn't. Her affidavit doesn't. The newspaper article doesn't. So when you're faced with solely the police report, is that sufficient to establish that the evidence compels a contrary result? Right. Well, she was found credible. And she said she had a fear of death because these people killed her husband or live-in boyfriend. And then the police report says that they're investigating the very people she mentions for murder. Don't those two things together corroborate her claims if, in fact, the BIA had considered the police report coupled with her credible testimony? We would submit that you must look at this case for the substantial evidence glass as standard of review. And while that is some corroboration, yes. The question is, does that particular piece of evidence, 185, compel the conclusion that she established her claim? We would submit that it alone does not. In conjunction with any of the other evidence. I think you're saying that you said it's not enough to carry the burden because I think what you're saying is that she's credible. That's undisputed. Her belief, her fear is credible. A person died and you could say he was murdered. It's a tragic case. Right. But the problem is, his being murdered by someone and who he alleged it is, means that that person did not like him, obviously, when they murdered him. And she's fearful, which is an appropriate response. But the question here is, as a family member, were you in fear when that was their threat, a threat that they would then take because they murdered this person, they want to murder you. If otherwise, that would mean somebody in your family is murdered. That's all you need here. The question, though, is the case where there's no evidence of any threat. And that's why the cooperation was important. I think that's what you argued. Even you considered the death certificate and assumed it was murdered by somebody who didn't like you. And the question is, she was able to live for several months without a threat being made to her directly, written or otherwise. I think she saw somebody who was related to Santos and she was fearful. That person didn't make a threat against her. So what they were saying is that it seemed like a case like this, perhaps something to say, there's a threat because this person said they were going to do something to me or everybody in the family. And the question is, there's substantial evidence to support that, whether or not he was murdered or by whom. Is that right? Your Honor, when you appear before the court, what you want to do is ask the right question. You just ask the right question. And that is the substantial evidence that supports the agency decision. And you're correct. And we've come full circle. What we opened with was to have the court be informed that its decision should be informed with the factual context of this claim. And you just now focused on that. She has no personal knowledge of any action or threat to her person or harm. Now, certainly she appeared credible with regard to what she had heard, what she had been told. But then again, that's why the law is magic or insight does say to the immigration judge that even though a person is credible, if they're otherwise credible under the statute, you can ask for corroborated evidence if it's reasonably available. And again, I think the important idea here is that she had the burden, as you pointed, Judge Gregory, the proponent of the evidence if they're siloed. You know, why was this evidence unavailable? You're the proponent of the evidence. In here, she admitted that she hadn't even tried to get affidavit of any person with regard to the perceived witnesses. And that goes even further than the niece and the sister-in-law who, first of all, had information about the deaths of the brothers. But regarding the death certificate, it was speculation on her part that people were fearful to state the cause of death or inform the authorities with regard to the cause of death being the Santos family because they feared the Santos family. Well, again, that's speculation on her part. And she produced no affidavit for any one of the reasons. The board realized that she didn't, and my colleague admitted that they didn't make that argument to the agency. The board still took it on and said, hey, you know, that fear of the Santos family being a deterrent to provide information on the death certificate really makes no sense because here they're providing affidavit in the United States regarding the Santos family. And how can you ask the Santos family to find out about those deaths? The board has not gone that strong yet. In summary, we would say very simply that if you look at, first of all, the necessity of the evidence, the missing evidence being identified, the opportunity that the immigration judge gave her to explain the deficiency, her failure to do so, and with regard to the affidavit, she never even tried. And then the immigration judge's affidavit establishes that she didn't meet her burden. And there can be no doubt that the immigration judge made a specific finding. Well, we're on page four of its decision, specifically stated the immigration judge made that finding. And the immigration judge did it very delicately. First of all, the judge found facts. And then secondly, he stated the law, and he started with the law of who has the burden. And on page 96, he said the petitioner didn't meet her burden. Counsel, I'm sorry to interrupt you, but you have the ability of a trial lawyer to talk on one breath for a long time. So let me ask you this question. You're familiar with Lombora, right? Our recent case, which says the agency, we require the agency to determine whether the corroborating evidence was reasonably available. Okay. Now here, the IJ drew the conclusion, she explained that she did not find respondent's explanation persuasive and considers it reasonable to expect such corroborating evidence. But where did she ever ask for that? I don't understand exactly. Are you saying in this particular factual situation, you don't have to have the agency determine whether the corroborating evidence was reasonably available because of the facts of this case that you went through with Judge Gregory? No, Your Honor, we're not making the argument that the agency didn't need to make that finding. We're making the argument that both the immigration judge and the board quite clearly made the finding that Watruba requires. They were prescient in this regard, of course, that the case was decided by the agency's decision. The administrative law judge said that he did not find respondent's explanation persuasive and considers it reasonable to expect such a persuasive corroborating evidence. That isn't a finding that is reasonably available. But the immigration judge specifically cited LAC in stating on page 94 of the record that the petitioner had the burden to establish the unavailability of the evidence. And then on page 96, the immigration judge specifically concluded that she had not met her burden. And that's why the board on page 4 said the immigration judge made the specific finding that she did not use the reasonably, did not establish that the evidence was not reasonably available. And again, Your Honor, I would submit the petitioner regarding the affidavits didn't even try. She didn't even ask for the affidavits. So how can the court say that if I follow the evidence, it's not even reasonably available? I would invite you to look at the, this case comes down to just a few pages of the record. Pages 3 and 4 of the board's decision, pages 94 and 96, and particularly pages 94 and 96. And then the record pages 145 through 148. Those pages provide. Thank you. We ask you to affirm the agency decision. Thank you, Mr. Hall. Ms. Grafton, you have some time reserved. Ms. Grafton, I think maybe I'd start with my colleague. That was my plan, Your Honor. I'd like to note that my colleague noted that there was only a certain number of pages of evidence that were relevant in this case. And I think that's specifically, he does not reference page 185, which is that police report. And that's one of our main arguments here is that the immigration judge did not consider all of the corroborating evidence in the record as is required under matter of LAC as well as this court's precedent. I'd like to point out that matter of LAC gives us a really great glimpse into what the agency's interpretation of the statute is relating to what corroborative evidence should be provided to the court. In matter of LAC, footnote five on page 522 of that decision lists out types of corroborative evidence we would expect to see in a case, including proof of the applicant's name and place of birth, evidence of relevant events in the country, documentation of medical treatment if there was any, and applicant's political participation. This is objective evidence that gives credence to the testimony that the petitioner provides. In this case, we did just that, we submitted that objective evidence, the police report, which we would expect to see if someone was murdered on a soccer field, we would expect to see a police report and that was submitted. You know, if someone's deceased, we would expect a death certificate and that was submitted. And so for that reason, I would argue that we provided precisely the objective evidence that matter of LAC indicates that an immigration judge would want to see in a case just to prevent an asylum applicant from making up a story, becoming very good at, you know, giving those facts to the court, and then the court having no reason to deny the case for, because there was no, you know, basis for an adverse credibility finding. But the police report is no corroboration of the threats. Well, correct your honor, it does not reference the threats, but it is corroborative that the petitioner is telling the truth. This isn't some made-up story, it's correct. You're right, she was deemed credible. And the problem is this case, you need, I think, it's important to have corroboration because, for example, the question is, how do we know what was told to her is true here? And like you said it right then, because that's what was told to her. But the corroboration here, yes, that's what I told her, that's what I heard, that's what I saw. And so that's the corroboration here, because, well correct, this is based on a threat because of family member, right? That's right, your honor. This is not the government, the attorney general does not dispute that you're a family member and the mother of his children, they were partners, that's fine, there's no harm there. But the question is, how does this riveted circumstance have the threats? And as to, Judge March asked a poignant question to Mr. Holt, and his question is, did they ask about it? But that is the answer when she says, I didn't ask. What he could, or she could say, why didn't you ask? Why did you do that? I don't think it's required to do that. You've given the answer, because the question is, why don't you have corroboration? Answer, I didn't ask, that's the end. Because it's not that I didn't ask because blah, blah, blah, blah, I didn't ask because they were unavailable, the answer is, I didn't ask, that is the answer. So you want us to rule that, oh, well then you have to go further and ask that question again, again, and again, and again, and say, you should have it, why don't you have it? No, you answered, I didn't ask. That's a categorical response to why there's no corroboration. It's as categorical as you can get. So what would they do? They would say, well, you know, you need to, I'm going to sit here and tell you, give me a reason. No, I didn't ask. Well, Your Honor, I think there's... Well, I think where the immigration judge errs is that there was a reason that she didn't ask, and that reason was never put into the record. And if looking through the transcript itself, you can see where the immigration judge is actually cutting off the response, keeping in mind, again, that there's an interpreter involved. And so rather than like you and I, we can have a question and an answer back and forth, there's a third person in the middle who is taking these sentences and having to cut them off at a specific time. Was the reason fear? Well, Your Honor, I think that's a fact that's only in the record as much as she testified that family members had a fear as far as giving a reason on the death certificate. Because she did say that that was the reason, was fear, with regard to that one death certificate of Walter, I guess it was. That's correct, Your Honor. And one of... Didn't have to say why she didn't have a statement from the sister-in-law or the niece. That's the threat. The death wasn't a threat. The death was an act as well. But it wasn't a threat. And I understand that, Your Honor. And I would argue that the point of corroborative evidence is objective evidence that shows that the petitioner is telling the truth, that these events did in fact happen. I would argue that she did in fact show that. And as far as the threat to the family members, the fact that two other brothers were murdered after that point by the same people, as far as the family believes, I think is evidence of that, Your Honor. This isn't just that her partner was murdered and she became fearful and that was the end of it. Her partner was murdered. She moved away. Her partner's brother was murdered. She came to the United States. Her partner's second brother was murdered. And here she is presenting a case to the court. And if I can make one last quick note, Your Honor, I'd like the court to keep in mind that my client at 21 years old entered the United States on June of 2016. This hearing was held before the immigration court on May of 2017, less than a year after her entry. And I think that's important when thinking about what corroborative evidence was presented to the court. And with that, I'd rest on the briefs, Your Honors. Okay. Well, thank you so much, Ms. Grafton and Mr. Holt. We appreciate it so much. I wish we could come down and greet you. Please know that we appreciate you. These are very difficult questions and it's very important to have very competent counsel, as you both are, help us with these. So I hope that you'll be safe and stay well. Thank you so much.
judges: Roger L. Gregory, Diana Gribbon Motz, Stephanie D. Thacker